May it please the Court, Meredith Parenti on behalf of Appellant Rosemarie Porretto. The lower courts failed to give full faith and credit to the probate court's order establishing that Rosemarie Porretto is entitled to $2.9 million on the note on which she bases her proof of claim. In fact, the lower courts gave the order no credit at all and instead relied on a figure from the debtor's schedules that all parties agree has no basis. The only question that the court should have considered was whether any payments were made after the probate court's order in February of 2008. There is no evidence in the record of any date. Therefore, there is no basis to reduce the amount that Porretto claims. The bankruptcy court improperly relitigated the basis for the probate court's order. The court faulted Rosemarie Porretto for not providing a payment history to support the $2.9 million figure contained in the probate court's order. Yet that was not necessary if the court had given proper full faith and credit to the order. Moreover, as the trustee concedes, there was no payment history to support the $1.019 million figure contained in the debtor's schedules. It is clear from the record that that number was simply mistaken. That is almost the same exact figure that the debtor gave as an overdue amount for all of her loans immediately prior to bankruptcy. The probate court expressly considered and examined the inventory and it signed an order approving it. Even if it were incorrect, the order would be entitled to full faith and credit as this court recognized in Sanders v. Brady. Especially given the lack of support for the figure contained in the debtor's schedules, the lower courts erred by failing to defer to the only calculation that had any support and that is contained in the probate court's order. Full faith and credit requires a federal court to give the probate court's order the same effect that it would have in a Texas court. And under Texas Estates Code Section 309.151, which is formerly Probate Code Section 261, once an inventory is considered and approved by a probate court, it may be used as evidence in a court case. Moreover, that provision goes further to say that the inventory is conclusive unless two situations that are not present here apply. And that is first, if the inventory omitted certain property or claims, entirely left them off. And second, if the amount of the property on the inventory actually exceeds the value stated on the inventory, someone could come in and show that the amount is actually higher than the inventory, but not that it's lower than the number contained in the inventory. And that's, again, that's in Section 309.151, subsection 2. Refresh my memory on how the figure in the probate inventory was derived. Is there... No, I just said refresh my memory as to how that figure came about or was established. There's no evidence in the record to show exactly where that number came from. The situation in this case is that all records underlying any of the figures were destroyed in Hurricane Maria. Claimants, home, as well as the attorney who prepared that inventory were destroyed. All the...they were both flooded. So there's no documentation. However, it's not necessary for a federal court to second guess how that number was derived. It's presumptively correct. Let's just say, in theory, if for whatever reason the figure in the probate code said $20 million, an amount which obviously is way more than anybody stretched the debt could be, right? But for some reason, that's the figure that showed up, nobody caught it, or whatever, whatever. Your argument would be that even if undeniably incorrect or whatever, the fact that it was part of the probate code would make it unassailable and full faith and credit should be given no matter what. That essentially would...I know that's not the case here, but I use that extreme example to where if it's, you know, some figure that's five times more than anybody would ever claim, but it's in there, you know, erroneously or not, that it's completely insulated for these purposes and litigation from any inquiry as to whether that's a good number or not. Yes, Chief Judge Stewart. In the Brady case, Sanders v. Brady, in fact, the state court made by all means, everyone agreed, was an erroneous decision about the scope of jurisdiction. And the court held that regardless of that error, it was still entitled to full faith and credit. So the idea behind full faith and credit is to give comity to the state court's decision, and therefore, it is not the place of the federal courts to second guess whether it was correct or not. And even when it's clear, as in Sanders, that the state court got it completely wrong, it would still be entitled to full faith and credit. And here, there was no evidence to suggest that that number was incorrect. And even assuming that the trustee could challenge that number, the trustee never even attempted to challenge the $2.9 million figure. Instead, both the trustee and the bankruptcy court assumed that the $1 million number contained in the schedules was presumptively correct. And they simply got that wrong and should have looked first at the probate court's order. And there was no evidence to suggest that that number was incorrect in this case. And therefore, the trustee never overcame his burden to show that that, that the number was incorrect. And, therefore, the presumptive number should have been the $2.9 million figure in the probate court's order on which Ms. Pareto bases her proof of claim. Moreover, the testimony regarding certain payments and credits that may have reduced the balance of the note came up and was discussed by the bankruptcy court and the district court. And, however, Rosemary Pareto testified that neither she nor her husband ever agreed to reduce the balance on the note by unrelated payments to attorneys in the state court litigation or any other in-kind credits for work done on the property. The testimony of the debtor was simply also inconclusive as to how much, you know, the amounts or when such credits would have been to reduce the amount on the, that was stated in the probate court's inventory, even if you could have second-guessed that under the full faith and credit clause. Further, the bankruptcy court found that there was no basis to rule against Pareto's claim because she's an insider of the debtor. She is the mother of the debtor. But the court specifically found in its findings of fact and conclusions of law that there was nothing in the record to show that Rosemary Pareto had engaged in any kind of skullduggery or inequitable conduct. Assume for the sake of, assume for the sake of discussion that the panel doesn't adopt the full faith and credit argument, how else do you prevail? Well, Your Honor, setting aside full faith and credit for a moment. I don't mean abandon it. I'm just saying, assuming. What we have here is a situation where the courts relied on a number that all parties agree has no basis. The $1.019 million number contained in the debtor's schedules, everyone agrees, is completely unsupported. The trustee admitted that there was no payment history to support that number. The debtor testified that she had no idea how that number was reached. And it's simply— Your client likewise says, doesn't she, that some of the payment, some of the diminution of the debt was arrived at because she provided in-kind services while working at the beach over the years, et cetera, et cetera. What was the basis for, was there something indicating what that time would have been worth? Was there some schedule? Was there some basis to ascertain, you know, an agreement between the family that because she worked, she was entitled to X? I mean, isn't all that pretty sketchy? Well, Your Honor, there was no—and actually, let me clarify. My client, the claimant did not testify that any payments or credits reduced the balance of the note at all. And there was testimony in the Section 341 hearings by the debtors that was not directed at any specific time period or any specific amount. It simply said, I have no idea about this The debtor did not purport to be a sophisticated businesswoman. She left the finances up to her ex-husband. She had no idea how that number was arrived at. And if you look at the—there's a chart that's contained in the record excerpts at tab 12. And it shows, actually, the calculation that was arrived at by the debtor and her attorneys to show what was her—what her back-due payments were, her overdue payments immediately before bankruptcy. And that shows, if you tally all of those up, that gets you to the $1.019 million number that we contend was mistakenly included in the schedules as the amount owed—the remaining amount owed on the Pareto Beach note. That number is clearly a mistake. The trustee doesn't address this. We spent five pages in our brief talking about that. The trustee doesn't contest that this number has no basis. He stated he was deeply concerned that that number had no basis. The record on appeal at 903, lines 23 to 25. So that number has no basis. What should have happened is that the court should have deferred to the only number that had any basis, and that was the number that came from the inventory approved by the probate court. And as a result, the court should reverse and render judgment that Pareto is entitled to a claim of $2.9 million plus interest and attorney's fees as provided in the note. Now, to the extent necessary, the court could remand to allow the bankruptcy court to reconsider the—Pareto's claim, giving proper deference to the probate court order. However, I don't believe that's necessary given that there is no evidence of any payments after the 2008 order approving the inventory. So that would be an option for the court, but it would also be appropriate for the court to render judgment because there's no basis and there's really nothing more that the bankruptcy court needs to do. All the evidence that's ever going to come out has come out already. There were simply no records to support the numbers stated in the schedule, and we maintain the trustee did not overcome his burden and that Mrs. Pareto's claim is entitled to be paid in full. And if there are no further questions, thank you. Thank you. Reserve rebuttal. All right, Mr. Williams. May it please the Court, Randy Williams. I'm the Chapter 7 trustee in the Pareto bankruptcy case. First, Your Honors, Ms. Parente is suggesting that an error that was made by the bankruptcy court and the district court was the finding that I overcame my burden to shift the burden to Ms. Pareto to prove her claim. That's never been an issue before the district court, and it's not an issue before this Court today. The two issues that Ms. Parente has raised is the full faith and credit, and the second issue was the justifiable loss of the books and records. So the bankruptcy court correctly concluded that based on what I was presented with, I had a proof of claim in one amount, I had the debtor's schedules and the debtor's testimony in a completely different amount. I don't know where Sonia Pareto, the debtor, came up with a $1,019,000 number. There is a letter in the record that you can total up and comes to that, but there's no testimony regarding that letter and that coincidence or whatever it is. Ms. Parente may not like it, but Sonia Pareto did swear under penalty of perjury to all the schedules that she filed, and she filed those schedules well after that letter. So if that had been an error, it could have been corrected, and as we stand here today, it's never been corrected. And in fact, we know that Sonia Pareto even filed her own conversion schedules with that same number in there, and not, because at that point in time, it was one of the times in the case that Sonia Pareto, the debtor, did not have an attorney. As to the full faith and credit argument, the inventory and the order approving it, it's a ministerial act. There is no trial. There is no evidence presented in support of that. It is the executor or the trustee's position in the probate matter, these are the assets, this is what we think they're worth. But the problem that we have is, is that to get to that, you know, the testimony of the Rosemarie Pareto, the mother, is no payments, no credits, interim payments, nominal payments. Even in her proof of claim, she references that after the probate inventory date, there may have been other nominal payments. They didn't really know, can't really say. But to get to a balance, the $2.9 million balance in the inventory, there would have had to have been substantial payments or credit between the time the note was issued in 2005 and the time of the inventory in 2008. And so, again, you have the testimony of Sonia Pareto, twice under oath, the first time with the U.S. trustee, the second time with me, that the million-dollar figure is arrived at by credits that she was given for work she did or money that she paid attorneys. I don't know how we overcome that evidence with an unsworn letter that didn't go challenged by the very person who authored the letter and gave sworn documents that to say there's no evidence is just wrong here because we have to, I have to, the creditors have to rely, the court has to rely that when the has to mean something. If the debtor comes to the 341 meeting, raises their right hand and testifies and says this is what happened, this is where we are, that is evidence, that's in the record. Sonia Pareto did not testify any time during the trial. Her testimony is there through her sworn documents that she filed and the probate and not the probate but the 341 testimony that she gave. As a result, I think that both Judge Bohm and Judge Gilmour made very reasoned decisions in finding the amount of the claim. All right. Thank you. I apologize, Your Honor. Are there any questions? I guess we're done. All right. Ms. Parenti? Yes, Your Honor. Just briefly, regarding the inventory being a ministerial act, let me address a case law regarding full faith and credit that I think this touches on about whether the underlying state court order had to be fully and fairly litigated. I would clarify that any case law that discusses that point really applies when parties are seeking preclusive race judicata effect from a final judgment or order. But the full faith and credit clause contained in Article IV, Section 1 of our Constitution applies to acts, records, and judicial proceedings. Now, neither acts, which are legislative acts nor records, could be fully or fairly litigated, and yet they're still entitled to full faith and credit. Similarly here, whether there was a full-blown adversarial hearing over the inventory is irrelevant. There certainly was an opportunity for someone to come in and challenge the amount stated in the inventory. The probate court's order stated that no one challenged it, and the court also stated that it considered and examined it, and it approved it. And that is all this Court needs to know, is that the court approved the inventory and that it is entitled to full faith and credit before the bankruptcy court. And here, the only question is, in light of that, were there any payments or credits made after the inventory was approved in February 2008? And there is no evidence in the record to suggest there were any payments made. There's testimony that the last payment was made in 2008. We don't know when, and therefore there's no basis to reduce the amount of the balance due on the proof of claim. Another point the trustee raises is that he assumes there had to be substantial payments and credits in order to reduce the balance of the note to what was contained on the schedules. Well, everyone agrees there is no basis for the $1.019 million number contained in the schedules. There's just no dispute about that. There's no payment history to support it. It simply appears to be an incorrect number. Whether there was any testimony about that is also unnecessary. It's just everyone agrees that number is baseless. It's not necessary to correct it when you give proper full faith and credit to the probate court's order and then look at whether there are any payments in the record after that order. Well, there aren't any payments, and therefore that is the number that should have been approved by the courts. So simply this case is unfortunate in that there was no evidence and documents were destroyed in a hurricane. And so we don't have a perfect world where there's a payment schedule supporting all the numbers. But that is not necessary here. When you give proper full faith and credit to the probate court's order and simply look at whether anything happened after that any payments happened after that to reduce the amount due on the note, then that is all that needed to be considered. And really, the courts entirely ignored the probate court order. They knew it was there. It was discussed, but they didn't give it any credit at all, and that does not comply with our Constitution. Thank you for your attention, Your Honors. Thank you. All right. Thank you, Counsel, for your briefing and argument. That completes the cases that are on the docket today for argument. That said, the panel will be in recess until 9 a.m. in the morning.